JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2638 | **DATE** | 1/31/2002 |
| **CASE TITLE** | TE-TA-MA Truth Foundation vs. The World Church of the Creator | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [45-1] is granted. Plaintiff's motion for summary judgment [42-1] is denied as moot. Defendant's motion for judgment on the pleadings [24-1] is denied as moot. Plaintiff's motion to strike defendant's surreply [64-1] is denied as moot. All future dates are stricken, including pretrial conference of 2/15/02 and trial of 3/18/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 01 2002 date docketed | 68 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK | 1/31/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | 02 JAN 31 PM 5:17 | | |
| MD courtroom deputy's initials | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TE-TA-MA Truth Foundation - Family of URI, Inc., | ) ) ) | **DOCKETED** |
| Plaintiff, | ) ) ) | FEB 0 1 2002 |
| v. | ) ) | No. 00 C 2638 |
| The World Church of the Creator, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, TE-TA-MA Truth Foundation - Family of URI, Inc. ("Church of the Creator"), filed a multi-count complaint against defendant, World Church of the Creator, alleging trademark infringement, unfair competition, and dilution under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and claims for trademark infringement, unfair competition and dilution under state law. The court has federal question jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. § 1331, and the diversity jurisdiction over the state claims under 28 U.S.C. § 1332. Both parties have moved for summary judgment, incorporating their arguments made in the pending motion for judgment on the pleadings. For the reasons articulated below, the court grants defendant's motion for summary judgment, denies plaintiff's motion for summary judgment, and denies the motion for judgment on the pleadings as moot.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.*, 477 U.S. at 324, 106 S. Ct. at 2553; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## FACTS

Plaintiff is a religious organization and a California corporation with its principal place of business in Ashland, Oregon. In 1988, plaintiff received U.S. Trademark Registration No.

1,496,724 ("Registration 1,496,724") for a mark consisting of a design phrase comprised of a symbol and the phrase CHURCH OF THE CREATOR. The registration provides that,

> No claim is made to the exclusive right to use 'church', apart from the mark as shown. The mark includes a background six-pointed star grid emanating light radiations, centered about a descending/ascending dove, centered about and cradling within its breast, the planetary sphere of earth.

(Pl.'s 56.1 Statement, Ex. 1.) The trademark is for use on "religious instructional and teaching materials namely, newsletters, books, journals, pamphlets, and brochures; photographs, calendars, posters, writing paper and envelopes, note cards; printed adhesive decals[.]" *Id.*

Plaintiff has made extensive use of the name and mark CHURCH OF THE CREATOR® in connection with services, including conducting classes, lectures, and seminars on religion and self-help; providing ministerial services; providing religious consulting services; providing ministerial ordination services; providing religious, spiritual, self-help and educational information by means of a global computer network; and providing computer services, namely, on-line magazines, newsletters and bulletins in the fields of religion, spirituality and self-help. Plaintiff has used the mark continuously and extensively in the United States, on and in connection with goods and services which it provides and distributes, since at least February 26, 1982.

In 1993, plaintiff filed a Combined Affidavit of Use and Inconstestability of a Mark Under Sections 8 and 15 [of the Lanham Act, 15 U.S.C. §§ 1058, 1065], on Registration 1,496,724, which the United States Patent and Trademark Office accepted. Plaintiff maintains a website, www.churchofthecreator.org and plaintiff's Vice President and Director, James Germain URI ("URI"), reviews all e-mail received at plaintiff's e-mail address, cotcmother@aol.com,

3

which is posted on plaintiff's website, and reviews all letters received at plaintiff's mailing address.

Defendant is a body of religious adherents and a non-profit unincorporated association with its headquarters and principal place of business in East Peoria, Illinois. Defendant's members adhere to the religion of "Creativity," a religion that espouses that the "White Race" is "the Creator" of all worthwhile culture and civilization. Defendant uses the name "World Church of the Creator" to communicate its messages through flyers, pamphlets, brochures, newsletters, television talk-show appearances and news interviews, and the Internet. Defendant's messages are frequently white-supremacist, racist, and anti-Semitic.

Plaintiff asserts that defendant's messages are incompatible with and antithetical to the messages conveyed by plaintiff's religious instructional and teaching material,[1] and that beginning in February, 1999 through October, 2000, Mr. URI reviewed and printed e-mails (from persons unknown to plaintiff, except one member of plaintiff's church) as well as a couple of letters, which plaintiff claims establish that consumers have been confused about the source of plaintiff's services as a result of defendant's use of its mark. Many of the e-mails expressed

---

[1] Plaintiff does not set forth in its 56.1 Statement the nature of its "messages," but one of the attachments in its 56.1 Statement contains a "Sacred Mandate" which Mr. URI explains is the "document signed by members of Plaintiff's church to indicate their decision to join in principle and witness of Plaintiff's church." This document provides:

> CHURCH OF THE CREATOR® Supports The Family Unification of Mankind In all Aspects Of The Whole. We of Like Mind Join Harmoniously In Oneness, Knowing That There Is Only One Creator-Source. The Many In One, Dedicate Our Physical Embodiments To The God Expression In Form, Bringing Forth By Example To This Planet Earth Love, Light and Peace. Therefore, Once Decreeing DIVINE RIGHT OF ORDER® In All Thoughts - All Things, Our Universe Automatically Aligns Into Manifestation of Heaven On Earth. Through The Priesthood of Melchizedek We Are One In The Body of Jesus Christ As Above So Below.

(Pl.'s 56.1 Statement, Ex. 3, URI Decl. ¶ 26, and Ex. 13.)

4

criticism about the white-supremacist message, while others expressed agreement with it.

In May 2000, plaintiff brought suit against defendant alleging claims of infringement of a federally-registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), unfair competition in violation of the Lanham Act 15 U.S.C. § 1125(a) (Count II), federal dilution (15 U.S.C. § 1125(c)) and state dilution (Illinois Trademark Registration Protection Act, 765 ILCS 1036/65 (1998)) (Count III), common law trademark and unfair competition (Count IV), and deceptive trade practices (Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (1992)) (Count V[2]). Plaintiff requests an injunction, profits, punitive damages for allegedly willful violations of above said laws, and attorneys' fees and costs.

## DISCUSSION

Defendant has moved for summary judgment, arguing that it is entitled to judgment on all of plaintiff's claims because (1) the term "Church of the Creator" is generic and thus plaintiff does not have a protectable trademark in "Church of the Creator," and (2) to grant the remedies plaintiff seeks would violate the First Amendment rights of defendant's adherents to freely practice their religion. Plaintiff has also moved for summary judgment, arguing that it is entitled to judgment because it is undisputed it has a protectable trademark and that defendant's use of the mark caused consumer confusion. Because the court concludes that defendant is entitled to summary judgment on the basis that the term "Church of the Creator" is generic and there is no material question of fact with respect to any other elements of plaintiff's claims (federal or state), it does not address defendant's First Amendment argument.

---

[2]Plaintiff identified the Illinois deceptive trade practices claim as Count VI in the complaint, but because there is no count in the complaint designated Count V, the court considers this an oversight and refers to it as Count V.

5

**Counts I and II**

In Count I, plaintiff asserts that defendant infringed its federally-registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).[3] In Count II, plaintiff asserts that defendant made false representations, descriptions and designations of origin of its goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[4] To prevail on either claim, proof of two elements is required: (1) plaintiff's mark is protectable and (2) defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 and n.8 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)).

A trademark is "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. The purpose of trademark law is to "aid consumers in identifying the source of goods by allowing producers the exclusive right to particular identifying words or symbols which they may attach to their products as a designator of source." *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th

---

[3] 15 U.S.C. § 1114(1), provides: "Any person who shall, without the consent of the registrant--(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided."

[4] 15 U.S.C. § 1125(a), provides: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

6

Cir. 1998) (quotation omitted). Nevertheless, trademark protection is not intended to "interfere with the traditional policies of a competitive market, and courts have generally recognized that the public substantially benefits from competition." *Id.* (citation omitted); *see also Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986) ("The goal of trademark protection is to allow a firm to affix an identifying mark to its product (or service) offering that will, because it is distinctive . . . , enable the consumer to discover in the least possible amount of time and with the least possible amount of head-scratching whether a particular brand is that firm's brand or a competitor's brand.").

Marks are generally classified in increasing levels of distinctiveness: generic; descriptive; suggestive; arbitrary; and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976) (Friendly, J.). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection. In contrast, generic marks – those that 'refer to the genus of which the particular product is a species,' . . . –are not registrable as trademarks." *Two Pesos*, 505 U.S. at 768 (internal quotations and citations omitted); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir. 1986) (A generic (or common descriptive) term "can never function as a trademark."). A term that is "merely descriptive" may be protectable as a trademark if it has acquired secondary meaning. *Liquid Controls*, 802 F.2d at 935. "A merely descriptive term is one that specifically describes a characteristic or an ingredient of a product." *Id.* at 936.

Defendant argues that it is undisputed that the term "Church of the Creator" is generic and therefore is not protectable as a trademark. Plaintiff responds that because its registered

7

mark CHURCH OF THE CREATOR® has become "incontestable," defendant cannot assert the defense of genericness as a matter of law and, even if it could, defendant has presented no evidence to overcome the presumption that the mark is not generic.[5] With respect to plaintiff's first contention, while it is true that a registered mark becomes incontestable after five years of continuous use, 15 U.S.C. § 1065, and once incontestable, the registration is "conclusive evidence of the validity of the registered mark," 15 U.S.C. § 1115(b), plaintiff's assertion that genericness is not a defense to an incontestable mark is contrary to both the statute[6] and case law,[7] and the citations relied upon by plaintiff do not support such a contention.[8]

---

[5] *See Liquid Controls*, 802 F.2d at 936 (The fact of registration entitles plaintiff to the presumption that the mark is not generic, § 1115(a), but the presumption may be overcome by proof that it is generic.).

[6] *See* 15 U.S.C. § 1065(4) (The right to use the registered mark "shall be incontestable: Provided, That–. . . *no incontestable right shall be acquired in a mark which is the generic name for the goods or services* or a portion thereof, for which it is registered."); 15 U.S.C. § 1115(b) ("*To the extent that the right to use the registered mark has become incontestable* under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark . . . .") (emphases added).

[7] *See Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 840 (9th Cir. 2001) ("An incontestable mark may be challenged, however, on the grounds that the mark is generic.") (citing 15 U.S.C. § 1115(b) and *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985)); *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 231 (9th Cir. 1989); *see also* 2 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 12:60 (4th ed. 2001) ("The incontestability provisions of § 15 do not bar the defense that the mark has become generic.") (citing 15 U.S.C. § 1065(4) and cases)); *cf. Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 n.7 (3d Cir. 1990) (discussing interplay of statutory provisions and noting that "[t]he term 'incontestable' is obviously somewhat misleading, since there are as many as 21 possible exceptions/defenses to the general rule of incontestability").

[8] Plaintiff relies on section 1115(b); however, as set forth *supra* n. 6, section 1115(b) applies only to the extent a mark has become incontestable, and by operation of section 1065(4) an incontestable right cannot be acquired in a generic mark. Plaintiff's reliance on *Sovereign Order of St. John of Jerusalem, Inc. v. Grady*, actually supports the rule that genericness is a defense to an incontestable mark. 119 F.3d 1236, 1240 (6th Cir. 1997) (accepting for purposes of argument that defendant's statutory argument regarding availability of defense was correct but upheld dismissal for lack of evidence). Finally, plaintiff's argument that Congress did not provide for the defense of genericness under the Lanham Act (*see* Pl.'s Opp. to Def.'s Mot. for J. on the Pleadings, at 2) ("Although Congress considered including genericness [as a defense], it declined to do so. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201 (1985) (*citing* Hearings on S. 895 before the Subcommittee of the Senate Committee on Patents, 77th Cong., 2d Sess., at 45, 47 (1942) ("Also mentioned [and rejected] was the possibility of including as a defense to infringement of an incontestable mark the 'fact that a mark is a descriptive, generic, or geographical term or device.'")), is unavailing. The Court's comment in *Park N'Fly*, relied on by plaintiff, was made in the context of

(continued...)

In any event, defendant does not seek to challenge the registered mark as a whole, but merely that part of the mark containing the term "Church of the Creator" and, as such, plaintiff is not entitled to the presumption that registration affords.[9] Likewise, the presumption applies only when the trademark is used on the goods and services specified in the registration,[10] which in

---

[8](...continued)
its holding that, under the Lanham Act, an incontestable mark could not be challenged on the basis of "mere descriptiveness." 469 U.S. at 201. The Court did not hold (nor did it suggest that Congress so intended) that the Lanham Act did not provide for a challenge based on genericness alone. To the contrary, the Court noted, within the same discussion, that the "supporters of the incontestability provisions . . . observed that a generic mark cannot become incontestable," *id.*, and earlier in its opinion referred to the Conference Committee's agreement to an amendment providing that "no incontestable right can be acquired in a mark that is a common descriptive, i.e. generic, term," and that "Congress could easily have denied incontestability to merely descriptive marks as well . . . had that been its intention." *Id.* at 197.
    Alternatively, plaintiff argues, without citation, that the Court in *Park N' Fly* recognized only that a party may petition for cancellation of a generic mark with the Patent and Trademark Office under 15 U.S.C. § 1064(3), but could not assert genericness as a defense to an infringement action. Again, however, *Park N' Fly* did not so hold and to imply as much would, as defendant points out, render meaningless the federal district court's concurrent authority under the Lanham Act to adjudicate such registration: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

[9]The registration itself indicates that "[n]o claim is made to the exclusive right to use 'church', apart from the mark as shown. *The mark includes a background six-pointed star grid emanating light radiations, centered about a descending/ascending dove, centered about and cradling within its breast, the planetary sphere of earth.*" (Pl.'s 56.1 Statement, Ex. 1) (emphasis added). *See* 15 U.S.C. §§ 1115(a), (b) (Registration is evidence of a trademark's validity, registration, ownership and exclusive right to use it "subject to any conditions or limitations in the registration[.]"); *In re National Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("The registration affords *prima facie* rights in the mark *as a whole*, not in any component.") (emphases in the original); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1042-43 (2d Cir. 1980) (holding that the owner of a registered trademark "Saratoga Vichy" could not assert rights in an unregistered trademark "Saratoga" absent proof of secondary meaning); 2 McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 12:40 ("It is possible to obtain federal registration of a logo or design composite even if the design consists of letters spelling out a generic name if the word is displayed in very distinctive lettering *or is accompanied by a distinctive design.* However, such a registration does not give any exclusive right to use the generic word per se. The only exclusive right from such a 'picture' registration is the use of that exact 'picture' which happens to spell out a generic name of the goods. Such logo registrations are no more than registrations of a picture or design which happens to spell out a generic name. Such registrations should not be viewed as giving protection to a generic name per se.") (emphasis added). The court, therefore, need not consider defendant's request (*see* Def.'s Reply to Mot. for J. on the Pleadings, at 5) to cancel plaintiff's registration on the basis that the term "Church of the Creator" is generic because, as just noted, the registration encompasses more than that term and defendant has not claimed that the composite registration is generic.

[10]15 U.S.C. §§ 1115(a), (b) (Registration is evidence of a trademark's validity, registration, ownership and exclusive right to use it "on or in connection with the goods or services specified in the registration[.]"); *Miller*
(continued...)

plaintiff's case are "religious instructional and teaching materials [of the kinds described in the registration]." From what the court can make of plaintiff's complaint and the facts in the record, however, the "goods and services" on which the defendant used the term "Church of the Creator" are its "messages," which defendant communicates through flyers, pamphlets, brochures, newsletters, television talk-show appearances and news interviews, and the Internet.[11] Alternatively (and because the parties assume as much), even if "Church of the Creator" were protected as a registered trademark, the evidence is more than sufficient to overcome any presumption that the term "Church of the Creator" is not generic and, indeed, there is no material fact with respect to whether the term is generic. *See Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996) (The question as to whether a term is generic "is a question of fact" and "as with any question of fact can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered.").

In deciding the question of genericness of the term "Church of the Creator," the court must consider the term as a whole. *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1161 (7th Cir. 1996). Whether a term is generic in the mind of the public is a question "of linguistic

---

[10](...continued)
*Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 77 (7th Cir. 1977).

[11]In essence, plaintiff seeks to prohibit defendant from referring to itself by the same or similar name as plaintiff in communicating its message. (*See* Compl. ¶ 13 ("The close similarities of the marks have led and would likely lead the public mistakenly to believe that [plaintiff] has approved, sponsored, or endorsed [defendant's] messages or activities, or that [plaintiff] and [defendant] are the same organization (or parts of the same organization)."); *id.* ¶ 19 ("[Defendant's] activities have caused, and . . . will continue to cause a likelihood of confusion and deception of members of the public an injury to [plaintiff's] good will and reputation as symbolized by CHURCH OF THE CREATOR® mark."); *see also* ¶¶ 23-24. *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989) ("Trademarks and trade names are technically distinct. Trade names are symbols used to distinguish companies, partnerships and businesses. *Trade names symbolize the reputation of a business as a whole.* In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services.") (emphasis added). However, the same general standards apply to a claim brought under the Lanham Act, whether termed a trade mark or trade name. *Id.*

usage," and the Seventh Circuit sanctions reference to the dictionary as well as the yellow pages of the phone book. *Door Sys.*, 83 F.3d at 171; *Liquid Controls*, 802 F.2d at 937-38; *see also Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80 (7th Cir. 1977) (Court may take judicial notice of "generally accepted English usage" in dictionary.). If a term appears "in a standard dictionary in lower case, this would be powerful evidence that the term was generic, because nouns and other nominatives listed in dictionaries, save for the occasional proper name, denote kinds rather than specific entities ('dog,' not 'Fido')." *Door Sys.*, 83 F.3d at 171. The fact that a term comprised of more than one word is not found in the dictionary, however, is not dispositive. *Liquid Controls*, 802 F.2d at 938. And while individual generic words may together form "more than the sum of their parts" and become a protectable trademark, "[o]ther composite terms are nothing more than the sum of their parts" and even together form only a generic and, therefore, unprotectable term. *Id.*

The court concludes that the combination of the word "church" and the words "of," "the," and "creator," which neither party disputes are generic by themselves, constitute only a generic term when combined together. The term "church" is defined as

> 1: a building for public worship and esp. Christian worship 2: the clergy or officialdom of a religious body 3: a body or organization of religious believers: as: the whole body of Christians b: denomination c: congregation 4: a public divine worship ⟨goes to ~ every Sunday⟩ 5: the clerical profession ⟨considered the ~ as a possible career⟩

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 205 (10th ed. 1999). The term "creator" is defined as: "one that creates usu. by bringing something new or original into being; esp, cap: GOD." *Id.* at 272. Together these words denote a class or genus of churches – those that consist of a building for worship of, or body of religious believers in, a creator-entity. While the term

11

"Church of the Creator" is not as generic as "church" by itself, the term "Church of the Creator" is at least generic for a subcategory of churches, namely those that consist of a building for worship of, or a body of believers in, a creator-entity.[12] *See Liquid Controls*, 802 F.2d at 938 ("Liquid Controls" is generic for devices to measure and control liquids.); *Mil-Mar Shoe*, 75 F.3d at 1160 ("Warehouse Shoes" and "Shoe Warehouse" is generic in that "both signify a particular type, category, or genus of retail stores: large stores that sell shoes in high volume at discount prices."); *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989) ("Blinded Veterans" generic for persons who are former members of the armed forces who had lost their vision);[13] *see also In re Computer Store, Inc.*, 211 U.S.P.Q. 72, 75 (T.T.A.B. 1981) (affirming refusal of registration of "The Computer Store" on finding that it was generic for computer sales services). That there is no evidence in the 2001 Chicago Consumer Yellow Pages of a church using the term "Church of the Creator" in its name does not give rise to an issue of fact in this case. *See Liquid Controls*, 802 F.2d at 938.

---

[12]In this sense, defendant's analogy to the term "Church of God" is helpful. Since "god" is defined as

> 1: cap: the supreme or ultimate reality: as a: the Being perfect in power, wisdom, and goodness who is worshiped as creator and ruler of the universe b Christian Science: the incorporeal divine Principle ruling over all as eternal Spirit: infinite Mind 2: a being or object believed to have more than natural attributes and powers and to require human worship; specif: one controlling a particular aspect or part of reality 3: a person or thing of supreme value 4: a powerful ruler

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 500, a "church of god" would be generic for an organization of believers in the supreme or ultimate reality or one controlling a particular aspect of reality. Certainly, one church could not incorporate the name "church of god" as their own and prohibit all others from using it, even if one church believes that "god" refers to different entities or realities. Indeed, the genericness of the phrase "church of god" is further evidenced by the yellow pages.

[13]Plaintiff's attempt to distinguish *Liquid Controls* and *Blinded Veterans* on the basis that the marks at issue in those cases denoted types of products and services with which they were used and here plaintiff used its mark not to refer to "churches" but only in relationship to the products plaintiff provides is unavailing, for the reason previously noted, *supra* n. 11.

Moreover, that plaintiff might consider creator to be "god"[14] and defendant the "White Race," does not establish that the term is not generic, but rather are differences that serve to distinguish plaintiff's brand from defendant's. Because the term "Church of the Creator" is generic, however, neither can lay claim to it as their own. It remains in the public domain. *See Pro-Line*, 83 F.3d at 171 ("The trademarking of generic terms would impose excessive costs of information on competitors and consumers and is therefore forbidden.") (citations omitted); *Blau Plumbing, Inc.*, 781 F.2d at 609-10 (Stating that "it is no purpose of trademark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands" and a company "cannot appropriate the English language, and by doing so render a competitor inarticulate."); *Blinded Veterans Ass'n*, 872 F.2d at 1039 ("Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even if it becomes associated with only one source."); *cf. New Thought Church v. Chapin*, 159 A.D. 723, 144 N.Y.S. 1026 (N.Y. App. Div. 1913) (denying plaintiff "New Thought Church" an injunction against defendant who sought to conduct services under name "New Thought Services," reasoning that plaintiff could not claim an exclusive right to a name that consisted of words, which together were only generic, and stating that plaintiff "is not in a position to successfully claim a monopoly of teaching this form of religious faith by means of organizations known by the generic names of churches").

Because plaintiff does not have a protectable trademark in the term "Church of the Creator" defendant is entitled to summary judgment on plaintiff's federal trademark and unfair

---

[14] Although plaintiff has not specifically stated how it defines "creator," in arguing against defendant's genericness argument, plaintiff appears to maintain that the term is defined by reference to "god." (*See* Pl.'s Opp. to Mot. for J. on the Pleadings, at 6.)

13

competition claims.[15]

**Count III**

In Count III, plaintiff seeks injunctive relief for dilution of its mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),[16] and the Illinois Trademark Registration Protection Act, 765 ILCS 1036/65 (1998).[17] To prevail on a Lanham Act dilution claim, plaintiff must establish: "(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999) (citations omitted). A finding that the mark in question is generic precludes recovery. *See Illinois High School Ass'n v. GTE Vantage Inc.*, 99 F.3d 244, 247 (7th Cir. 1996) ("[I]f a mark becomes generic it is no longer distinctive, as [15 U.S.C. § 1125(c)(1)] require[s]."); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir. 1999) ("[Generic words] are totally without distinctiveness and are ineligible for protection [under 15 U.S.C. § 1125(c)] as marks because to

---

[15]The Seventh Circuit has held that even if a term is generic, a plaintiff may have a claim for "passing off" under 15 U.S.C. § 1125(a). *See Liquid Controls*, 802 F.2d at 939-40. However, to establish a "passing off" claim, there must be evidence of confusion resulting from more than just similarity of names; there must be some evidence of fraud – that defendant is "trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Id.* at 940 (citation omitted). Plaintiff does not appear to make such a contention. (*See* Pl.'s Mem. in Support of Summary J., at 7) ("Plaintiff does not contend that Defendant intended to traffic on the goodwill of Plaintiff's name."). In any event, even if it has, occasional misdirected mail, which seems to be the result of a mere confusion of similarity of names, is not sufficient to establish a "passing off" claim. *Id.*

[16]15 U.S.C. § 1125(c), provides: "The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

[17]765 ILCS 1036/65, provides: "The owner of a mark which is famous in this State shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this Section."

give them protection would be to deprive competitors of the right to refer to their products by name."). Likewise, to establish a claim under the Illinois Trademark Registration Protection Act, plaintiff must establish, *inter alia*, that its mark is "distinctive." *Kern v. WKQX Radio*, 175 Ill. App. 3d 624, 529 N.E.2d 1149, 1156-57 (1st Dist. 1988) (citing *Ye Olde Tavern Cheese Prods., Inc. v. Planters Peanuts Div., Standard Brands, Inc.*, 261 F. Supp. 200 (N.D. Ill. 1966), *aff'd*, 394 F.2d 833 (7th Cir. 1967)). As with the federal claim, however, a finding of genericness precludes recovery. *See id.* Because the Court has concluded that "Church of the Creator" is generic, defendant is entitled to summary judgment on plaintiff's dilution claims.

**Counts IV and V**

In Count IV, plaintiff seeks relief for common law trademark infringement and unfair competition. In Count V, plaintiff seeks relief for defendant's alleged deceptive acts or practices in the conduct of business in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. Because plaintiff cannot succeed in showing that it has a protectable trademark in the name "Church of the Creator," however, it cannot prevail on its state claims for common law trademark and unfair and deceptive business practices. *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983) (granting summary judgment on state claims after finding plaintiff did not have valid trademark); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (dismissing claim brought under the Illinois Deceptive Trade Practices Act). Therefore, defendant is entitled to summary judgment on these claims as well.

## CONCLUSION

For the reasons set forth above, the court grants defendant's motion for summary judgment [#45], denies plaintiff's motion for summary judgment [#42], denies, as moot, defendant's motion for judgment on the pleadings [#24] and denies, as moot, plaintiff's motion to strike defendant's surreply [#64].

Date: January 31, 2002

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge