Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2638 | **DATE** | 2/26/2003 |
| **CASE TITLE** | TE-TA-MA Truth Foundation vs. The World Church of the Creator | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion to disqualify the assigned judge is denied. Status hearing is set for 3/13/03 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 27 2003 | |
| | Notified counsel by telephone. | | date docketed | 194 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | G.Y. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 FEB 26 PM 2:45 | 2/26/2003 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | FILED-IO Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TE-TA-MA Truth Foundation -- Family of URI, Inc., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 00 C 2638 |
| | ) | Judge Joan H. Lefkow |
| The World Church of the Creator, | ) ) | |
| Defendant. | ) | |

FEB 2 7 2003

## MEMORANDUM OPINION AND ORDER

Before this court is the motion of defendant, The World Church of the Creator ("World Church"), to disqualify the undersigned United States District Judge (hereinafter, "the assigned judge") brought pursuant to 28 U.S.C. § 144 upon the affidavit of World Church's principal spokesperson, Matthew Hale ("Hale"), attesting that the assigned judge has personal prejudice against World Church. World Church also moves under 28 U.S.C. § 455(a) on the basis that the assigned judge's impartiality might reasonably be questioned and § 455(b)(1) on the basis that the assigned judge has a personal bias or prejudice against World Church. The motion is denied, based on the facts and reasons set forth below.

## FACTS

The case before this court is one of trademark infringement, unfair competition, and dilution under both the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and state law. On January 31, 2002, after adjudicating the litigants' cross-motions for summary judgment, the assigned judge entered judgment in favor of World Church. *TE-TA-MA Truth Found. -- Family of URI, Inc.* v.

*World Church of the Creator*, 61 U.S.P.Q.2d 1914, 1922 (N.D. Ill. 2002). Plaintiff, TE-TA-MA Truth Foundation -- Family of URI, Inc. ("the Foundation") appealed, and the Seventh Circuit reversed this court's judgment and remanded the case with the instructions that this court enter "an appropriate judgment in favor of the Foundation." *TE-TA-MA Truth Found. -- Family of URI, Inc. v. World Church of the Creator*, 297 F.3d 662, 667 (7th Cir. 2002). On November 19, 2002, this court entered two separate orders, the first a permanent injunction against World Church in accordance with the Seventh Circuit's mandate and the second an order denying Defendant's Request for a Stay and to Correct Mistakes in the Appellate Court's Decision.

On December 12, 2002, the Foundation filed a motion for rule to show cause why World Church should not be held in contempt of court for non-compliance with the court's November 19, 2002 order. The court granted the Foundation's motion and issued a rule to show cause against World Church and ordered Hale and World Church's counsel, Todd Reardon ("Reardon"), to appear before it on January 8, 2003 for a show cause hearing.

On December 18, 2002, World Church moved to disqualify the Foundation's counsel and on December 28, 2002, to disqualify the assigned judge. On December 24, 2002, Hale filed in the United States District Court for the Central District of Illinois a putative class action law suit against the assigned judge, alleging violations of the First, Fourth and Fifth Amendment constitutional rights of World Church's members arising from the court's injunction. *Hale v. Lefkow*, 02 C 1420, 2003 WL 122387, at *1 (C.D. Ill. Jan. 15, 2003). The court dismissed the case on its own motion on January 15, 2003, on the basis of judicial immunity and frivolousness. *Id.* at *3.

Moreover, as required,[1] the assigned judge hereby discloses on the record the following facts: At some time, approximately mid-December, 2002, the United States Attorney for the Northern District of Illinois, Patrick Fitzgerald, informed the assigned judge that an investigation of Hale (and perhaps others associated with World Church) was being conducted by the Federal Bureau of Investigation ("FBI"). Mr. Fitzgerald notified the assigned judge that based on information received through an informant for the FBI, Hale had made statements encouraging the informant in an expressed willingness to kill the assigned judge. Mr. Fitzgerald suggested, but the assigned judge declined, enhanced security measures, although the assigned judge indicated that if the FBI learned that Hale had her home address, she would like to revisit the matter.

The assigned judge also viewed World Church's website, www.wcotc.org or www.creator.org, and there observed verbal attacks on her based on her presumed Jewishness, her marriage to a presumed Jew and her presumed "mixed race" grandchildren. (As to the truth behind these presumptions, the assigned judge has no comment). These materials were also contained in filings made by the Foundation in support of its allegations of contempt of court along with evidence that Hale and his followers had been allegedly harassing the Foundation's counsel via telephone and e-mail.

An agent of the FBI contacted the assigned judge during the last week of December 2002 to inform her that Hale had learned her home address. At approximately the same time, agents

---

[1] Section 455 requires the judge "to disclose on the record any circumstances that may give rise to a reasonable question about his impartiality." *United States v. Salerno*, No. 98 C 3980, 2000 WL 821713, at *4 (N.D. Ill. June 23, 2000), quoting *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985).

3

and employees of the FBI in cooperation with the Chicago Police Department and members of the United States Marshal's Service (the "Marshal's Service") offered a variety of security measures. The assigned judge accepted some of the security measures offered including security surveillance at her home. Hale was indicted on January 7, 2003, Case No. 03 CR 0011 (N.D. Ill.), and arrested in the federal courthouse in Chicago on January 8, 2003. The two-count indictment alleges that "from on or about November 29, 2002 through at least on or about December 17, 2002," Hale solicited another individual to forcibly assault and murder the assigned judge in violation of 18 U.S.C. § 373 (conspiracy/solicitation to commit a crime of violence) and, further, "endeavored to influence, intimidate, and impede" the assigned judge in violation of 18 U.S.C. § 1503(a) (obstruction of justice/influencing or injuring officer or juror generally). (Case No. 03 CR 0011, Docket Number #1). In response to Hale's arrest, the assigned judge cancelled the contempt hearing until further notice. The arrest was broadcast on national news, evoking widespread expressions of outrage and concern to the assigned judge from friends, family and even strangers (including the Honorable Joan B. Lefkowitz, Justice of the New York Supreme Court in Westchester County, who reported that she had received a phone message condemning her for her ruling in a case about which she knew nothing until she heard of the arrest on the news).

On January 9 and 10, the assigned judge canceled her schedule, which included postponing a trial currently underway. On January 10, based on an unrelated personal matter and on the advice of personnel of the FBI and the Marshal's Service who needed to assess security risks after the arrest, the assigned judge along with some members of her immediate family left the city for several days. Because the assigned judge was unavailable, her schedule was canceled

4

for the following week, January 13 through 17, 2003, although she communicated with her chambers, worked on other matters pending before the court and issued two opinions on other unrelated cases.

On January 23, 2003, Hale appeared before the Honorable Andrew P. Rodovich, United States Magistrate Judge for the Northern District of Indiana (because the case was assigned to a judge outside of the Northern District of Illinois), for a detention hearing. At that hearing the government proffered evidence in support of its position that Hale was a danger to the community and a risk of flight and, thus, must be detained pending trial. In that proffer, the government revealed, most salient here, that after the injunction was entered Hale referred to the assigned judge as "corrupt" and directed his chief of security (who was the informant) "to find out the home addresses of" the assigned judge, "probable Jew or married to a Jew . . . and the three attorneys representing plaintiff in this case." (Case No. 03 CR 0011, Tr. of Proceedings of Jan. 23, 2003 at 14.) Following this, Hale stated in an e-mail, "Any action of any kind against those seeking to destroy our religious liberties is entirely up to each and every Creator according to the dictates of his own conscience." (*Id.*) In another communication between Hale and the informant, the informant stated that "when we get the home address [referring to "the Jew, Judge"] we're going to exterminate the rat." (*Id.* at 16.) Hale responded, "Well, whatever you want to do, basically." (*Id.*) In a recorded conversation with members of World Church that occurred in June 2000, Hale stated ". . . But you do have the right to resist by whatever means necessary [t]his government which we consider to be illegitimate, and this is an illegitimate government." (*Id.* at 24.) After reviewing the evidence, the magistrate judge detained Hale as a danger to the community and as a risk of flight. Hale's trial is set for July 14, 2003. The

5

assigned judge has no reason to believe that she will be a witness in the criminal case.

## ANALYSIS

### A. Rule 11, Fed. R. Civ. P., compliance

As a threshold matter, the Foundation asks this court to determine whether World Church's motion to disqualify complies with Rule 11, Fed. R. Civ. P., ("Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."). *See Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 547-48 (1991) (determining that Rule 11 applies to a party's agent who signs pleadings). According to the Foundation, the signature of World Church's counsel, Reardon, appears on the papers as a rubber stamp facsimile. Further, the Foundation points out that the motion to disqualify was served not from Charleston, Illinois, where Reardon's office is located but from East Peoria, Illinois, where Hale resides. The Foundation also provides other credible allegations that Hale, a non-attorney law school graduate, is representing World Church despite the court's March 29, 2001 order that only a licensed attorney may represent World Church. (*See* Pl. Resp. at 2-5.) Based on these facts, the Foundation asserts that the court need not address the merits of the motion to disqualify because the motion violates Rule 11. At this time, the court will not strike the pleadings and papers but will allow the Foundation to offer evidence of this conduct at the contempt hearing. Any finding by the court that Reardon has allowed Hale to "ghost write" and facsimile-sign papers filed in this case will be reported to the Executive Committee of this court and to the Illinois Attorney Registration and Disciplinary Commission for such discipline as may be appropriate. The court now turns to the merits of the motion to disqualify.

## B. 28 U.S.C. § 144

World Church asserts that the assigned judge must disqualify herself because World Church filed an affidavit pursuant to 28 U.S.C. § 144, which provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accomplished by a certificate of counsel of record stating that it is made in good faith.

"In passing on the legal sufficiency of the affidavit, the court must assume the truth of the factual assertions even if it 'knows them to be false.'" *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993), quoting *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985). "At the same time, the facts averred must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Sykes*, 7 F.3d at 1339; *see also Tezak v. United States*, 256 F.3d 702, 717 (7th Cir. 2001). And "[t]he alleged bias and prejudice to be disqualifying [under § 144] must stem from an extrajudicial source." *Liteky v. United States*, 510 U.S. 540, 544 (1994) (internal citations and quotations omitted).[2] Because the statute "is heavily weighed in favor of recusal," its requirements are to be strictly construed to prevent abuse. *Balistrieri*, 779 F.2d at 1199.

---

[2] "The words ["extrajudicial source"] connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . ." *Liteky*, 510 U.S. at 550. (emphasis in original).

Taking the averments of the affidavit as true,[3] the court must determine whether the motion is timely. An affidavit is untimely unless filed "at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for such disqualification." *Sykes*, 7 F.3d at 1339, quoting *Balistrieri*, 779 F.2d at 1199. As indicated, § 144 requires the recusal affidavit to be filed not less than 10 days *before* the beginning of the proceeding because it "'must be based upon facts antedating the trial, not those occurring during the trial'" and because § 144 "'was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, . . . but to prevent his future action in the pending cause[.]'" *Liteky*, 510 U.S. at 549, quoting *Berger v. United States*, 255 U.S. 22, 34 (1921), and *Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 44 (1913); *see Carbana v. Cruz*, 595 F. Supp. 585, 586-87 (D.P.R. 1984) (finding the plaintiff's motion to recuse untimely because it was filed 19 days after judgment and citing, *inter alia, Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1330 (9th Cir. 1974), and *Weber v. Coney*, 642 F.2d 91, 92-93 (5th Cir. 1981)); *accord, In re Martin-Trigona*, 573 F. Supp. 1237, 1245 (D. Conn. 1983) ("The purpose of a timeliness requirement for the assertion of claims of personal bias is to prevent a litigant from using motions to disqualify as dilatory tactics or as means to sample the temper of the court before deciding whether to raise an issue of disqualification . . . or to ambush a court that is on the verge of acting--possibly to his detriment--on matters he deems important.") (internal citations and quotations omitted).

---

[3]Hale's affidavit, in pertinent summary, attests that the World Church practices a religion called "*Creativity*." (Def. Mot. Ex. A, Hale Aff. ¶ 3.) He explains that "*Creativity* is dedicated to the survival, expansion, and advancement of the White Race. As such, we deplore any action--especially the genetic mixing of the races--that thwarts that survival, expansion, and advancement." (*Id.* ¶ 4.) Hale further states the World Church "oppose[s] individuals of the Jewish Race and background and want[s] their total exclusion from our society." (*Id.* ¶ 5.) He attests that he "discovered" the assigned judge has a husband who is "of Jewish descent" and, based on an Internet search, that the assigned judge has grandchildren who are "half-Negro." (*Id.* ¶¶ 6, 8.) He further attests that the Foundation is pro-Jewish. (*Id.* ¶ 9.)

8

Clearly, Hale's affidavit is untimely because it was filed after the final injunction was entered, long after even the ruling by the Seventh Circuit and the return of the mandate to this court on August 27, 2002. Nor can the information on which World Church rests, *supra* note 3, be considered newly discovered where it is based in part simply on the assigned judge's last name, which has been known since the case was assigned to her in September 2000, and the additional information Hale inferred from an Internet search was available at least as early as February 2002.[4] Without question, the motion could have been made promptly after the mandate returned to this court on August 27, 2002. Because the affidavit is untimely, it is unnecessary to treat the substance of the allegations of bias in light of § 144, although the same issues arise under § 455 and are discussed below.[5]

## C. 28 U.S.C. § 455

World Church contends that "it is impossible for [the assigned judge] to either subjectively or objectively be impartial" in light of Hale's law suit against the assigned judge and in light of her family relationships, requiring recusal under § 455(b)(1). (Def. Mot. at 1, 6.) World Church also comments in a supplemental memorandum filed January 15, 2003 that the recent indictment of Hale would make it impossible for the assigned judge not to be biased against World Church under § 455(b)(1). (Def. Supp. Mem. at 2-3.) Further, even if the

---

[4] The website cited in Hale's affidavit was established by the assigned judge's husband in connection with a judicial election that occurred in March 2002.

[5] Moreover, as the Foundation points out, whether Reardon, World Church's counsel of record, actually prepared and signed a certificate of counsel, attesting that the affidavit was made in good faith, is in doubt. *See Lindsey v. City of Beaufort*, 911 F. Supp. 962, 965-66 (D.S.C. 1995) ("The certificate of counsel is an indispensable part of the affidavit; and the statutory language requiring that the affidavit be accompanied by 'a certificate of counsel of record stating that it is made in good faith' is subject to strict construction[,]" quoting *Duplan Corp. v. Deering Milliken, Inc.*, 400 F. Supp. 497, 507-08 (D.S.C. 1975)).

assigned judge is not actually prejudiced, World Church contends that a reasonable, well-informed observer would question her impartiality, requiring recusal under § 455(a). The Foundation argues that the motion is entirely meritless and should be summarily denied.

Section 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This section is the "catchall recusal provision, covering both interest and relationship and bias and prejudice grounds." *Liteky*, 510 U.S. at 548 (holding that the extrajudicial source doctrine applies to § 455(a)) (internal citations and quotations omitted). The court reviews § 455(a) objectively, determining whether "a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996) (internal citations omitted); *see also Matter of Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998) ("The standard in any case for a § 455(a) recusal is whether the judge's impartiality could be questioned by a reasonable, well-informed observer."). "This inquiry is made based on a reasonable person standard, as opposed to 'a hypersensitive or unduly suspicious person,' . . . so as to avoid 'a system of peremptory strikes and judge shopping.'" *Ramirez v. Elgin Pontiac GMC, Inc.*, 187 F. Supp. 2d 1041, 1044 (N.D. Ill. 2002), quoting *Hook*, 89 F.3d at 354. "Actual bias is not necessary; the appearance of bias is adequate to trigger recusal under § 455." *United States v. Salerno*, No. 98 C 3980, 2000 WL 821713, at *3 (N.D. Ill. June 23, 2000). On the other hand, it is well settled that a judge has an affirmative duty not to disqualify herself unnecessarily. *Rivera v. United States*, No. 89 CR 346, 2001 WL 736778, at *2 (S.D.N.Y. June 29, 2001).

Moreover, under § 455(b)(1) the assigned judge must disqualify herself "[w]here [the judge] has a personal bias or prejudice concerning a party." But under § 455(b)(1) as under

§ 455(a), the court must make the same reasonable person inquiry, the only difference being that § 455(b)(1) concerns the judge's bias or prejudice against the party whereas §455(a) concerns the judge's general bias or prejudice and interest or relationship that may cause the judge not to decide the case based on the merits. *Ramirez*, 187 F. Supp. 2d at 1045. Further, disqualification under § 455(b)(1) is required "only if actual bias or prejudice is proved by compelling evidence[,]" which must "arise from an extrajudicial source[.]" *Hook*, 89 F.3d at 355 (internal citations and quotations omitted); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001).

*1. Hale's law suit against the assigned judge*

World Church acknowledges that a judge is not subject to disqualification merely because a litigant sues the judge, citing *In re Martin-Trigona*, 573 F. Supp. at 1243 (stating "it *is* clear that a judge is not disqualified under 28 U.S.C. § 455 . . . merely because a litigant sues or threatens to sue him.") (emphasis in original).[6] World Church, however, argues that its motion for disqualification is distinguishable because it is not judge-shopping but rather has a "good

---

[6] It is well-established that recusal based on the putative class action law suit brought by one of World Church's members against the assigned judge is unwarranted. *See, e.g., United States v. Watson*, 1 F.3d 733, 735 (8th Cir. 1993) (holding the criminal defendant was not denied his due process right to an impartial judge where the judge presided over case despite the defendant's suing the judge in state court); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) ( "A judge is not disqualified merely because a litigant sues or threatens to sue him."); *Jemzura v. Pub. Serv. Comm'n*, 961 F. Supp. 406, 411 (N.D.N.Y. 1997) (denying motion to disqualify although the litigant sent a letter to the judge demanding $50 to reimburse him for filing papers, threatening to sue the judge, and notifying the judge that the litigant was pursuing judicial misconduct proceedings); *Andersen v. Roszkowski*, 681 F. Supp. 1284, 1289 (N.D. Ill. 1988) (denying motion to disqualify because, *inter alia*, the moving party did not have "a legitimate basis for suing [the judge.]"); *Fowler v. United States*, 699 F. Supp. 925, 928 (M.D. Ga. 1988) (determining that the moving party cannot suggest that "a litigant unhappy with a trial judge's ruling in a prior case can force the judge to recuse himself from future cases by simply bringing a civil action against him."); *In re Martin-Trigona*, 573 F. Supp. at 1242-43 (denying motion to disqualify the judge although the litigant purportedly sued the judge in state court); *Erickson v. Fed. Land Bank*, 107 B.R. 222, 224 (D. Neb. 1989) (denying motion to disqualify the judge based on the moving party's law suit against the judge because "the claims stated against [the judge] are frivolous and could have been dismissed *sua sponte*" and the moving party "should not be permitted to frustrate the administration of justice by asserting frivolous claims against sitting judges."). World Church provides no case law to the contrary.

11

faith basis" that other individuals will believe that the assigned judge will incarcerate World Church's members to punish them for filing a putative class action law suit or to impede them in the prosecution of the law suit rather than to enforce the court's November 19, 2002 order and, further, another judge "can just as easily decide" the order to show cause. (Def. Mot. at 3-5.)

This argument is without any basis in law or common sense. The reasonable, well-informed observer would undoubtedly believe that the assigned judge would enforce the injunction with the civil remedies available to the court. See Rule 70, Fed. R. Civ. P., (Judgment for Specific Acts; Vesting Title), which remedies typically do not include incarceration in trademark infringement cases.[7] Further, it is not true that any judge could just as easily decide the order to show cause, for a variety of reasons, not the least of which is that the assigned judge is familiar with the case whereas a new judge could not be without duplicative effort. World Church presents no basis other than its own belief for the view that the assigned judge would conduct the proceeding any differently from any other judge confronted with the same facts and issues. Thus, World Church has not demonstrated recusal under § 455(a) and (b)(1) based on Hale's law suit.

2.   *The assigned judge's family relationships*

In addition, World Church cites no case law to support its position that a judge's family relationships can be the basis for a finding of bias against a party who does not share the same

---

[7]Rule 70 authorizes, for example, the court to appoint another person to do the act which the disobedient party refuses to do, to have the clerk issue a writ of attachment against the property of the disobedient party, to adjudge the disobedient party in contempt, or to divest title to property subject to an order that title may be delivered to the prevailing party. *But see Syndia Corp. v. Gillette Co.*, No. 01 C 2485, 2002 WL 2012473, at *4 (N.D. Ill. Aug. 30, 2002), citing *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985) ("'If violation [of a court's order] is found, the contemnor may be punished by fine . . . and imprisonment, even in civil contempt.'") (internal citations omitted).

values as the judge. The probability that a new judge would be equally objectionable to World Church based on race, religion or family relationships is substantial. Rather, these are the types of influences that are outside the "extrajudicial source" doctrine. *See, e.g., Blank* v. *Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) (denying motion to disqualify in sex discrimination suit where judge, before she joined the bench, had engaged in civil rights litigation). The assigned judge, as all judges of this court, is bound by her oath to follow the law, which in this instance entails fulfilling the mandate of the Seventh Circuit. *See Del Vecchio* v. *Ill. Dep't of Corrections*, 31 F.3d 1363, 1373 (7th Cir. 1994) ("[J]udges are subject to a myriad of biasing influences; judges for the most part are presumptively capable of overcoming those influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness.").[8]

World Church points to no prior conduct by the assigned judge that raised its concerns about her impartiality nor would such an argument seem plausible given that she previously entered judgment in World Church's favor. *See New York Hous. Dev. Corp.* v. *Hart*, 796 F.2d 976, 980 (7th Cir. 1986) (determining that § 455(a) is not a "form of peremptory challenge against the judge."); *see also United States* v. *Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1995) ("Given that [the judge] provided [the defendant] with the requested relief (suppression of incriminating evidence) despite his knowledge of [the defendant's] alleged threat, we would be hard pressed to say that there exists the kind of basis for [the defendant's] personal bias claim that might justify

---

[8]Nor has World Church cited any perceived animosity on the part of the assigned judge based on what she has learned about World Church through this litigation. *Accord, Liteky*, 510 U.S. at 550 ("Imagine, for example, a lengthy trial in which the presiding judge for the first time learns of an obscure religious sect, and acquires a passionate hatred for all its adherents. This would be "official" rather than "personal" bias, and would provide no basis for the judge's recusing himself.").

13

our requiring the judge's recusal even in the absence of a timely motion on [the defendant's] part."). For these reasons, the court concludes that World Church has not demonstrated actual bias or prejudice nor would a reasonable, well-informed person believe that the assigned judge's impartiality towards World Church would be questionable based on the perceived religion or race of her family members or her personal opinion about World Church's beliefs.

3. *The indictment against Hale and his pending criminal case, 03 CR 0011*

Fortunately, there are few cases treating recusal where a judge is the target of violence by a party or a representative of a party. The few that exist relate to criminal cases in which due process protections are central. In *United States v. Greenspan*, 26 F.3d 1001, 1005-07 (10th Cir. 1994), the trial judge sentenced a defendant on an expedited basis after learning from the FBI that an investigation was underway concerning an alleged conspiracy to kill the trial judge and his family. The defendant was said to be involved in the conspiracy, which was believed to span several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a "hit man." The Tenth Circuit ruled that the judge should have recused himself because the threat had not been communicated directly to him, there was no indication in the record that the threat was a ruse to recuse the judge, the judge had reacted by accelerating the sentencing date for the stated reason that the judge wanted to get the defendant into the penitentiary as soon as possible and had refused to grant a continuance of the sentencing hearing even though the defendant's counsel had been appointed only two days before the sentencing date. Under these "unique circumstances," the court concluded that the judge should have recused himself from sentencing the defendant pursuant to § 455. *Id.* at 1006. Specifically, the court determined that the totality of the circumstances surrounding the sentencing hearing

14

contributed to an appearance that the judge was prejudiced against the defendant. *Id.* In addition, with respect to the death threat, the court advised,

> [I]f a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if he thereafter affirmatively seeks a recusal. . . . [I]f a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute.

*Id.*

In *United States v. Cerrella*, 529 F. Supp. 1373, 1374 (S.D. Fla. 1982), the judge recused himself from ruling on post-sentencing matters after an appeal where he "[had] reason to believe that not only [had] defendant . . . expressed intentions to murder this judge but after the rulings apparently [had] let a 'contract' to effect that objective." The judge represented that he was put under around-the-clock protection by the Marshal's Service, which remained in effect on the date of the decision. The court, while rejecting the § 144 affidavit and allegations of personal bias, granted the motion under § 455(a), stating,

> Beyond all legal argument, beyond all case precedent, a reasonable person in the street, faced with a judge sitting on post-conviction matters that could free from incarceration a man who has put out a 'contract' on the judge, would have to harbor doubts as to the judge's impartiality.

*Cerrella*, 529 F. Supp. at 1382.

On the other hand, in *Rivera*, 2001 WL 736778, at *2, the judge declined to recuse herself from ruling on a petition under 28 U.S.C. § 2255. The judge distinguished *Greenspan* on the basis that the judge's name on a "hit list" recovered by law enforcement personnel, "was so vague that it was not taken seriously [at the time] and therefore did not cause the Court to stray from its normal procedures." *Id.*

15

Similarly, in *Salerno*, 2000 WL 821713, at *3-7, Judge Ann Claire Williams, then a district judge, denied the § 2255 petitioner's motion to recuse where the United States Attorney informed her of an alleged death threat by a co-defendant six days before the retrial of the defendant on charges of murder and conspiracy to commit murder began and the judge presided at the trial without informing the defendant or his counsel of the threat. Before the § 2255 petition was filed, the threat was determined to be unsubstantiated. The court ruled under § 455(a) that there was "simply no reason that a reasonable person would perceive a significant risk that this court would resolve [the] case for any other reason than on its merits." *Id.* at *6.

In *United States v. Nauracy*, No. 94 C 3200, 92 CR 914, 1994 WL 449273, at *7 n.1 (N.D. Ill. Aug. 17, 1994), the prosecutor reported to the judge that the defendant had threatened to kill the judge after he was sentenced, and that the threat may raise an issue of recusal. The judge did not recuse herself from ruling on the § 2255 petition, stating, "Threats and other attempts at intimidation normally do not require disqualification under section 455(a). . . . Courts that have required disqualification have done so because the defendant engaged in affirmative steps, such as intricate conspiracies to carry out the threats." *Id.*, citing *Greenspan*. Because the defendant's purported threat was unsubstantiated and was never directly communicated to the court, and the court was unaware of any affirmative steps taken by the defendant to effect any alleged threat, the judge concluded that disqualification was not required. *Id.*; *see Cerrella*, 529 F. Supp. at 1380-81 (stating "In general, courts have held that a party cannot effect recusal of a trial judge by the party's own actions; but those cases usually involve prior statements made by the party that are critical of the judge, rather than the criminal activity at issue here.").

16

The principles the assigned judge draws from these criminal cases is that a judge should recuse if (a) a death threat was communicated directly or indirectly to her; (b) she took the death threat seriously; (c) it was substantiated; (d) she has taken some action against the defendant such as in *Greenspan* to avert the threat; and (e) her judgment could affect the liberty of the defendant. Here, as stated, the death threat was communicated indirectly (and the judge learned of verbal attacks against her on World Church's website through accessing the website and through the Foundation's filings). The alleged solicitation for murder has been substantiated to the point of a finding of probable cause and the assigned judge, of course, took the information seriously although, understanding that the person who allegedly was to arrange the killing was in fact an informant, the assigned judge's concern was substantially abated. And, although the assigned judge accepted with gratitude the security measures taken on her behalf, she has to date neither observed nor learned of any suspicious conduct by any member of World Church in or around her home, her office, or places that her immediate family members frequent. Moreover, Hale is currently in custody and thus any threat he personally might have posed has been thwarted.

The assigned judge did not take action against World Church to avert the threat. She canceled the contempt hearing because Hale, who was scheduled to appear before the court, had just been arrested and was in the government's custody; therefore, in fairness to him, the contempt hearing had to be rescheduled.[9] Moreover, as the Foundation points out, Hale is not a party to this law suit, in any event. It is the organization, World Church, which is required to

---

[9]The cases are clear that a judge has to take an action against the defendant in the pending case and not an action that affects other cases. As such, it is irrelevant that the assigned judge canceled her schedule for the remainder of the week and the following week for both an unrelated personal matter and on the advice of the FBI and the Marshal's Service.

17

respond to the court's order, and as Hale is in custody someone else will have to take responsibility for World Church's response to the court's order to show cause. Thus, there is no reasonable likelihood that Hale's liberty will be affected by what the assigned judged does in this litigation.

At the heart of the matter are two facts which lead the assigned judge to conclude that she should not recuse. First, this is a civil case in which the court is to resolve a trademark dispute between two organizations that seek to use similar names. World Church, through Hale, has launched a broadsided effort to disqualify the assigned judge, including his allegedly encouraging a cohort to "exterminate" her. But it is a one-sided war in which this court is not embroiled. Hale's conduct falls under the doctrine that a party should not be allowed to intimidate a judge off the case. Second, and perhaps more fundamentally, based on Hale's expressed contempt for this nation's "illegitimate government," there is no reason to believe that any other judge who might inherit this case after a recusal would not be subject to the same or similar attacks as Hale has directed towards the assigned judge. In light of all of the circumstances presented here, the assigned judge concludes that she has no actual bias or prejudice towards World Church and that a reasonable, well-informed observer would not question her impartiality but rather, if asked, would urge the assigned judge to stay the course in the face of World Church's and Hale's conduct, and this is what she shall do.

## ORDER

For the reasons set forth above, the court denies defendant's motion to disqualify the assigned judge. This case will be called for a status hearing on March 13, 2003 at 10:00 a.m.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: February 26, 2003